1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    BRAVE AND FREE SANTA CRUZ, et          No.  2:24-cv-02312-DAD-JDP
      al.,
12
                     Plaintiffs,
13                                            ORDER DENYING PLAINTIFFS' MOTION
            v.                                FOR A PRELIMINARY INJUNCTION
14
      TOMAS J. ARAGON, in his official        (Doc. No. 25)
15    capacity as Director of the California
      Department of Public Health, et al.,
16
                     Defendants.
17

18

19          On August 26, 2024, plaintiffs Brave and Free Santa Cruz, Free Now Foundation, D.C.,

20    and B.P. filed this action against defendants Tomas J. Aragon, in his official capacity as Director

21    of the California Department of Public Health ("defendant CDPH"), Tony Thurmond, in his

22    official capacity as California State Superintendent of Public Instruction for the California

23    Department of Education ("defendant CDE"), Gavin Newsom, in his official capacity as

24    Governor of the State of California, Gilroy Unified School District, and Anisha Munshi,

25    Superintendent of Gilroy Unified School District.[1]  (Doc. No. 1.)  On October 31, 2024, plaintiffs

26    filed their first amended complaint ("FAC"), asserting various claims for relief arising from

27    ─────────────────────

28    [1] On December 17, 2024, plaintiffs filed a non-opposition to the dismissal without prejudice of
      Gilroy Unified School District and Superintendent Anisha Munshi.

                                                  1

1    defendants' alleged failure to provide a free appropriate public education ("FAPE") to

2    unvaccinated students with disabilities.  (Doc. No. 14.)  Plaintiffs bring these claims pursuant to

3    the Individuals with Disabilities Education Act ("IDEA") and two permanent injunctions issued

4    by the U.S. District Court for the Northern District of California in 1983 and 1990, neither of

5    which apparently address vaccination requirements.[2]  (*Id.*)

6         This matter came before the court on January 21, 2024 for a hearing on plaintiffs'

7    December 3, 2024 motion for a preliminary injunction seeking to require defendants CDPH and

8    CDE to take various steps designed to ensure all unvaccinated children with disabilities have

9    access to mainstream classes.  (Doc. No. 25.)  Attorney Richard B. Fox appeared by video for

10   plaintiffs.  Deputy Attorney General Katherine Jean Grainger appeared by video on behalf of

11   defendants CDPH and Governor Gavin Newsom.  Attorney Leonard Bruce Garfinkel appeared by

12   video on behalf of defendant CDE.  Attorney Seth Gordon appeared by video on behalf of

13   defendant Gilroy Unified School District.  For the reasons explained below, the court will deny

14   plaintiffs' motion for a preliminary injunction.

15                                    **BACKGROUND**

16   **A.    Relevant Legal Background**

17        The Individuals with Disabilities Education Act provides federal funding to states and

18   requires that children with disabilities are provided, *inter alia*, a free appropriate public education,

19   individualized education programs ("IEP"), and the least restrictive environment ("LRE") such

20   that children with disabilities are educated with children who are not disabled where possible.  20

21   U.S.C. § 1412(a).  The Individuals with Disabilities Education Act "requires a plaintiff to exhaust

22   his or her administrative remedies before filing a civil action."  *Swanson v. Yuba City Unified*

23   /////

24   _____

25   [2]  At the January 21, 2025 hearing on plaintiffs' motion for preliminary injunction, plaintiffs
     explained that the docket in *Doe by Gonzales v. Maher*, No. 80-cv-04270 (N.D. Cal.) lists
26   permanent injunctions issued in 1983 and 1990, but the records of any 1990 permanent injunction
     have since been destroyed.  Because the 1983 permanent injunction was appealed and affirmed in
27   part, however, the contents of the 1983 permanent injunction are still available.  *See Doe v.
     Maher*, 793 F.2d 1470, 1501–1502 (9th Cir. 1986), *aff'd as modified sub. nom. Honig v. Doe*, 484
28   U.S. 305 (1988).

1  *Sch. Dist.*, No. 2:14-cv-01431-KJM-DB, 2016 WL 6039024, at *1 (E.D. Cal. Oct. 14, 2016)

2  (citing 20 U.S.C. § 1415(l)).

3        In 1983 the U.S. District Court for the Northern District of California issued a permanent

4  injunction requiring that the CDE's State Superintended of Public Instruction and all successors

5  take certain steps to ensure compliance with the Individuals with Disabilities Education Act. *Doe*

6  *v. Maher*, 793 F.2d 1470, 1501–1502 (9th Cir. 1986), *aff'd as modified sub. nom. Honig v. Doe*,

7  484 U.S. 305 (1988). The 1983 *Doe* permanent injunction was designed to address expulsions

8  and other disciplinary actions taken against students with disabilities where the disciplinary action

9  was based on behavior or misconduct which was a manifestation of or arose out of the student's

10  disability. *Id.* at 1501. The permanent injunction issued in *Doe* did not address vaccination

11  requirements. *Id.* at 1501–1502.

12        In moving for preliminary injunctive relief in this case, plaintiffs rely on three parts of the

13  *Doe* injunction:

14          6. Defendants are permanently enjoined and shall require or provide
        proper notice to parents or guardians of proposed changes of
15          placement and changes in the provision of a free appropriate public
        education including, but not limited to, a description of procedural
16          safeguards available to them, the action proposed by the [local
        educational agency] and the reasons therefor, the options considered,
17          and the reason any options were rejected;

18          10. Defendants are permanently enjoined from authorizing the denial
        of, or otherwise denying, plaintiffs a free and appropriate public
19          education in the least restrictive environment or otherwise violating
        the provisions of 20 U.S.C. § 1401 et seq., as amended, 29 U.S.C. §
20          794, or the regulations promulgated thereunder;

21          12. The court finds that there is an absence of state policy in the
        following areas and that the failure to adopt policy is likely to result
22          in continued violation of the right of plaintiffs and other similarly
        situated handicapped students to a free appropriate public education
23          as required by the [IDEA] and, therefore, the state defendants are
        permanently enjoined:
24

25              (b) to ensure that all local educational agencies within the
            State are carrying out the provisions of the [IDEA], thereby
26              assuring that all handicapped children are receiving a free
            appropriate education as defined by that Act and as amplified
27              in this injunction; to ensure local compliance the state
            defendants must either enact a policy or set of regulations
28              implementing this injunction that will be binding upon the
            local educational agencies, or must establish a system of

1
2
3
4
5

> monitoring which is adequate to ensure that all the local educational agencies are complying fully with the [IDEA] and this injunction; the state defendants are therefore enjoined to submit to the court for its approval, within sixty (60) days of the date of this order, either a proposed binding policy, regulations, or a proposed monitoring plan; said policy, regulation or plan shall include provisions for assuring compliance with ¶¶ 1–11 of this Order.

6    *Id.* at 1501–1502.

7         In 2015, California eliminated the religious and personal belief exemptions to the

8    mandatory immunizations required for California school children.  Cal. Health & Safety Code

9    § 120335(b).  The Act eliminating the religious and personal belief exemptions to immunization

10   requirements also included a subsection relating to IEP students.  *Id.* at § 120335(h) ("This

11   section does not prohibit a pupil who qualifies for an individualized education program, pursuant

12   to federal law and § 56026 of the Education Code, from accessing any special education and

13   related services required by his or her individualized education program.").  In the action pending

14   before this court, plaintiffs do not challenge the statute requiring immunizations.

15   /////

16   /////

17   /////

18   /////

19   /////

20   /////

21   /////

22   /////

23   /////

24   /////

25   /////

26   /////

27   /////

28   /////

4

1

**B.      Relevant Factual Allegations[3]**

2

1.      Defendants CDE and CDPH

3      Plaintiffs allege that defendants CDE and CDPH interpret the IEP exception to

4  vaccination requirements differently.  According to plaintiffs, when addressing administrative

5  complaints, defendant CDE requires that IEP students retain access to mainstream classes

6  regardless of their vaccination status.  (Doc. No. 14 at ¶ 104.)  In contrast, defendant CDPH has

7  "told many California school districts that IEP students can be [removed] from their regular

8  ('mainstream') classes if they don't comply with the immunizations required under California

9  Health and Safety Code Section 120335(b)."  (*Id.* at ¶ 111.)  Specifically, plaintiffs allege that

10  defendant CDPH has sent the following two emails to different school districts:

11
12
13

> "If a child has an IEP, they may access those services listed in the
> IEP without complying with the IZ requirements. However, the
> parents should provide information about any vaccines that the child
> has received.  If the parents are seeking to have their child participate
> in other, non-IEP specified services, schools may require that the

14

_____

15  [3] The following facts are drawn from the allegations of plaintiffs' FAC and attached exhibits, the
   declarations and exhibits filed in support of the pending motion, and the exhibits to plaintiffs' and
16  defendant CDE's requests for judicial notice.  (Doc. Nos. 14, 25-1, 25-2, 41); *Res. Lenders, Inc.
   v. Source Sols., Inc.*, 404 F. Supp. 2d 1232, 1239 (E.D. Cal. 2005) ("In determining whether a
17  preliminary injunction is warranted, the Court may consider otherwise inadmissible evidence,
   such as hearsay.").  Plaintiffs have requested judicial notice of the following documents:  copies
18  of five California Office of Administrative Hearings decisions (Exs. 1–2, 5, 12, 15), copies of ten
   investigative reports of the Complaint Resolution Unit of the CDE (Exs. 3–4, 6–11, 13–14),
19  emails to and from the CDPH (Exs. 16–18), and an affidavit filed in another case (Ex. 19).  (Doc.
   No. 25-2.)  Defendant CDPH objects to plaintiffs' request for judicial notice of exhibits 16–18.
20  (Doc. No. 32-1.)  Having considered the parties' positions, the court takes judicial notice of the
   existence of exhibits 1–15 as matters of public record.  *S.B. ex rel. Kristina B. v. California Dep't
21  of Educ.*, 327 F. Supp. 3d 1218, 1228 n.1 (E.D. Cal. 2018) (taking judicial notice of the existence
   of documents issued by the Office of Administrative Hearings as matters of public record).  The
22  court also takes judicial notice of the existence of exhibit 19 as a court filing.  *GemCap Lending,
   LLC v. Quarles & Brady, LLP*, 269 F. Supp. 3d 1007, 1019 (C.D. Cal. 2017), *aff'd sub nom.
23  GemCap Lending I, LLC v. Quarles & Brady, LLP*, 787 F. App'x 369 (9th Cir. 2019).  However,
   the court declines to take judicial notice of the emails in plaintiffs' exhibits 16–18.  *Corsini v.
24  Canyon Equity, LLC*, No. 10-cv-02061-JL, 2011 WL 13247445, at *5 (N.D. Cal. Feb. 14, 2011)
   ("The email exchange contained in Exhibit A is not an adjudicative fact whose source [and]
25  accuracy cannot be reasonably questioned.").  Defendant CDE also requests judicial notice of an
   order issued in another case.  (Doc. No. 41.)  The court takes judicial notice of the existence of
26  this order.  *S.B. ex rel. Kristina B.*, 327 F. Supp. 3d at 1228 n.1 ("Thus, where a court takes
   judicial notice of another court's opinion, for example, it may do so not for the truth of the facts
27  recited therein, but for the existence of the opinion, which is not subject to reasonable dispute.").

28

> child meet the immunization requirements to participate in those non-IEP activities.  If this is the situation, we recommend that you discuss your schools policy with your school/district legal counsel."

(*Id.* at ¶ 112.)

> "Glad I can help! The IEP exception is not straightforward.  Children can access the services in their IEP without meeting the immunization requirements; however, the law does not specify an exception for non-lEP services.  Schools/districts have varying policies on implementing the IEP exception in immunization law as the language is not very specific and IEP resources vary.  For example, some schools are able to provide certain IEP services at home, some allow unimmunized students to come on campus for IEP services and return home afterward, while others allow unimmunized students with IEPs on campus all day.  The school may wish to reach out to their legal counsel for guidance on receipt of non-lEP services and immunization status."

(*Id.* at ¶ 113.)

    2.    <u>Plaintiffs D.C. and B.P.</u>

Plaintiffs allege the following in their FAC.  D.C. is an unvaccinated IEP student who is currently in seventh grade attending a school in the Gilroy Unified School District.  (Doc. No. 14 at ¶ 89).

His mother, B.P., received a text message on June 6, 2024, stating her son would not be allowed to enroll the following school year unless he complied with immunization requirements.  (*Id.* at ¶ 5) ("If you are receiving this notification, our school records show that your child has not provided proof of their Tdap vaccination and does not currently meet the requirements of the California School Immunization law, Health and Safety Code Sections 120325-120375 and/or County Immunization Requirements for 7th grade . . . Your student will NOT receive their 7th grade schedule until immunization requirements are met.").  On June 15, 2024, B.P. sent, via counsel, a letter to the Superintendent of the Gilroy Unified School District demanding that D.C. be allowed to continue his education in the schools of that district.  (*Id.* at ¶ 6.)  She did not receive a response.  (*Id.*)

On August 7, 2024, however, the school nurse inquired by email regarding D.C.'s immunization status.  (*Id.* at ¶ 7.)  B.P. sent the school nurse a copy of the demand letter she had sent to the Superintendent.  (*Id.*)  The school nurse called B.P. later that day to inform her that

1    D.C. would be allowed to attend school.  (*Id.*)  D.C. was allowed to attend school at the start of

2    seventh grade and his access to school has continued without interruption since then.  (*Id.*)

3            D.C. and B.P. then requested that the school district formally agree to allow D.C. to attend

4    his classes without regard to his immunization status.  (*Id.* at ¶ 8.)  The school district has made

5    no response to this request.  (*Id.*)

6            B.P. is now a subscriber to the weekly newsletter published by the Free Now Foundation

7    and the Free Now Foundation purportedly speaks for her as the mother of a disabled child who

8    receives services under an IEP.  (Doc. No. 25-1 at 38.)

9            3.      Plaintiffs Brave and Free Santa Cruz and Free Now Foundation

10           Brave and Free Santa Cruz's members include "current and/or potential parents and

11   grandparents of unvaccinated children who wish their children and grandchildren to have the right

12   to attend public and private schools, pre-schools, and daycare centers without regard to

13   immunization status."  (Doc. No. 25-1 at 41) (declaration).  "The group also includes some

14   members and/or attendees with family members who attend school under" IEPs.  (*Id.*)  Free Now

15   Foundation similarly states that "the general membership of Free Now Foundation is comprised,

16   in part, of individuals who are California citizens who have school aged children or grandchildren

17   that are not fully vaccinated in accord with the requirements of Section 120335, and who wish

18   their children and grandchildren to have the right to attend public or private schools, pre-schools,

19   and daycare centers without regard to immunization status."  (*Id.* at 45.)  "Significant numbers of

20   Free Now Foundation's members have minor family members who attend school under" IEPs.

21   (*Id.* at 45–46.)

22           "One of the primary stated purposes of Brave and Free Santa Cruz is to promote medical

23   freedom and choice."  (*Id.* at 41.)  "One of the primary stated purposes of Free Now Foundation is

24   to protect civil liberties and health rights for all, especially children."  (*Id.* at 45.)

25           4.      Plaintiffs' Claims and Requested Preliminary Injunction

26           Based on the foregoing allegations, plaintiffs bring the following three claims:  (1) failure

27   to comply with two permanent injunctions issued on December 2, 1983 and November 19, 1990

28   in *Doe by Gonzales v. Maher*, No. 80-cv-04270 (N.D. Cal.) brought against defendant CDE; (2)

failure to assure compliance by all schools receiving funds under the Individuals with Disabilities Education Act with the requirements of the Act brought against defendant Gavin Newsom and defendant CDE; and (3) improper threatened expulsion of IEP student, D.C., and improper threatened denial of a free appropriate public education to him without prior written notice in violation of the Individuals with Disabilities Education Act brought against defendant Gilroy Unified School District and defendant CDPH.  (Doc. No. 14 at ¶¶ 226–53.)

Plaintiffs' prayer for relief seeks declaratory and injunctive relief, costs and attorney fees, and all further relief to which plaintiffs may be entitled.  (*Id.* at 85–90.)

Plaintiffs' pending motion for preliminary injunction requests that the court require:  (1) defendant CDE and all successors to comply with parts 6, 10, 12(b) of permanent injunctions entered December 2, 1983 and November 19, 1990 in *Doe by Gonzales v. Maher*, No. 80-4270 (N.D. Cal.); (2) defendant CDE and all successors to notify, within 15 days, local education authorities that California children who qualify for IEPs under the Act must be educated without regard to their immunization status; (3) defendant CDE to notify, within 30 days, local education authorities that (a) communications regarding immunization requirements must include a disclaimer regarding IEP students' exemption, and (b) proposed changes to child's IEP services based on immunization status must be preceded by prior written notice; (4) defendant CDE to notify, within 30 days, all parents and guardians of all California children who have qualified for IEPs that (a) those children must be educated without regard to immunization status, and (b) any proposed changes to IEP services based on immunization status must be preceded by prior written notice; and (5) defendant CDPH to notify California school districts, pre-schools, and childcare centers under his jurisdiction that students with IEPs are exempt from immunization requirements.  (Doc. No. 25 at 2–5.)

As stated above, plaintiffs filed the pending motion for preliminary injunction on December 3, 2024.  (*Id.*)  On December 17, 2024, defendant CDE filed an opposition.  (Doc. No. 30.)  On the same day, defendant CDPH filed an opposition, and on December 27, 2024, plaintiffs filed their response thereto.  (Doc. Nos. 32, 36.)

/////

8

**LEGAL STANDARD**

"The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011)) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'") (quoting *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). "In the Ninth Circuit, a plaintiff may also obtain a preliminary injunction by showing 'serious questions go[ ] to the merits' of its claims and a balance of hardships that tips 'sharply' towards the plaintiff, so long as it makes a showing on the other two factors." *A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018) (citation omitted) (alterations in original). The party seeking the injunction bears the burden of proof as to each of these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief."). Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

The likelihood of success on the merits is the most important *Winter* factor. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). A plaintiff bears the burden of demonstrating that they are likely to succeed on the merits of their claims or, at the very least, that "serious questions going to the merits were raised." *All. for Wild Rockies*, 632 F.3d at 1131.

**ANALYSIS**

**A.     *Doe by Gonzales v. Maher* Permanent Injunctions**

Plaintiffs' first claim seeks enforcement of 1983 and 1990 permanent injunctions issued by the U.S. District Court for the Northern District of California in *Doe by Gonzales v. Maher*,

1    No. 80-cv-04270.  (Doc. No. 14 at ¶¶ 226–33.)  Therefore, the court first addresses its own

2    authority to enforce permanent injunctions issued in the Northern District of California.[4]

3        It appears clear that the undersigned, sitting as a district judge in the Eastern District of

4    California, lacks the authority to 'enforce' an injunction issued in the Northern District of

5    California.  *Xcentric Ventures, LLC v. Arden*, No. 10-cv-80058-SI, 2011 WL 806629, at *3 (N.D.

6    Cal. Mar. 2, 2011) ("Plaintiff's motion [to enforce a permanent injunction] does not cite a single

7    court case or statute to explain why it has chosen to come to the Northern District of California

8    for this purpose, or to explain why it is legal or appropriate for this Court to enforce an injunction

9    issued elsewhere.  It appears to the Court that plaintiff's motion is really a motion to find that

10   defendants are in contempt of the Arizona court's order, and an effort to effectuate one of the

11   Arizona court's threatened contempt sanctions."); *Wright v. Runnels*, No. 2:05-cv-02530-MCE-

12   EFB, 2007 WL 9807471, at *3 (E.D. Cal. June 28, 2007) (finding that a court in the Eastern

13   District of California does not have authority to find a plaintiff in contempt of an order issued in

14   the Northern District of California).  Indeed, the Eighth Circuit has found that where a plaintiff

15   brings a claim for contempt of another court's injunction, the court lacks subject matter

16   jurisdiction over that claim.  *Klett v. Pim*, 965 F.2d 587, 590 (8th Cir. 1992) ("The plain meaning

17   of [18 U.S.C. § 401] prevents a federal court from imposing a sanction for contempt of another

18   court's injunction.").

19       When given an opportunity to address this issue at the January 21, 2025 hearing on the

20   pending motion, plaintiffs' counsel informed the court that they had no authority for the

21   proposition that this court may enforce a permanent injunction issued by the Northern District of

22   California.  The court therefore finds that it lacks authority to adjudicate plaintiffs' first claim.  As

23   such, the court will disregard this claim in addressing plaintiffs' pending motion for preliminary

24   injunctive relief.

25   _____

26   [4]  As a preliminary matter, the court notes that the appropriate vehicle for seeking enforcement of
     a permanent injunction is a motion for contempt.  *See e.g., Jerry's Famous Deli, Inc. v.*

27   *Papanicolaou*, 383 F.3d 998, 1001 (9th Cir. 2004) ("The district court's contempt order found
     [the defendant] in violation of three provisions of the stipulated permanent injunction.").  No such

28   motion has been made in this case.

1    **B.     Standing**

2           1.     <u>Applicable Legal Standard</u>

3           "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the

4    threshold requirement imposed by Article III of the Constitution by alleging an actual case or

5    controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983); *see also Matter of East*

6    *Coast Foods, Inc.,* 66 F.4th 1214, 1218 (9th Cir. 2023) (Because "standing is an 'essential and

7    unchanging' requirement . . . a party must establish an Article III case or controversy before we

8    exert subject matter jurisdiction.") (citations omitted); *City of Oakland v. Lynch*, 798 F.3d 1159,

9    1163 (9th Cir. 2015) ("A suit brought by a plaintiff without Article III standing is not a 'case or

10   controversy,' and Article III federal courts lack subject matter jurisdiction over such suits.")

11   (quoting *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004)).  An actual case or

12   controversy will be held to exist when a plaintiff establishes standing.  *Lujan v. Defs. of Wildlife*,

13   504 U.S. 555, 560 (1992).

14          "[S]tanding requires that (1) the plaintiff suffered an injury in fact, i.e., one that is

15   sufficiently 'concrete and particularized' and 'actual or imminent, not conjectural or

16   hypothetical,' (2) the injury is 'fairly traceable' to the challenged conduct, and (3) the injury is

17   'likely' to be 'redressed by a favorable decision.'"  *Bates v. United Parcel Serv., Inc.*, 511 F.3d

18   974, 985 (9th Cir. 2007) (*en banc*) (citing *Lujan*, 504 U.S. at 560–61).  "Standing must be shown

19   with respect to each form of relief sought, whether it be injunctive relief, damages or civil

20   penalties."  *Id*.  "[T]o establish standing to pursue injunctive relief . . . [plaintiff] must

21   demonstrate a real and immediate threat of repeated injury in the future."  *Chapman v. Pier 1*

22   *Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (internal quotation omitted).

23   "To determine whether organizational standing requirements have been satisfied, [courts]

24   'conduct the same inquiry as in the case of an individual:  Has the plaintiff alleged such a

25   personal stake in the outcome of the controversy as to warrant his invocation of federal-court

26   jurisdiction?'"  *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 662 (9th Cir. 2021) (quoting

27   *Havens Realty Corp*. *v. Coleman*, 455 U.S. 363, 378–79 (1982)).  "Organizations can assert

28   /////

11

1    standing on behalf of their own members, or in their own right." *E. Bay Sanctuary Covenant*, 993

2    F.3d at 662 (internal citations omitted)

3        An organization has associational "standing to bring suit on behalf of its members when

4    its members would have standing to sue in their own right, the interests at stake are germane to

5    the organization's purpose, and neither the claim asserted nor the relief requested requires

6    individual members' participation in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl.*

7    *Servs. (TOC), Inc.*, 528 U.S. 167, 169 (2000); *see also Stavrianoudakis v. United States Fish and*

8    *Wildlife Service,* 108 F.4th 1128, 1143 (9th Cir. 2024); *Associated General Contractors of*

9    *America, San Diego Chapter, Inc. v. California Dept. of Transp.*, 713 F.3d 1187, 1194 (9th Cir.

10    2013).

11        2.    Plaintiffs D.C., B.P.

12        Here, it is conceded that the individual claims of plaintiffs D.C. and B.P. are moot because

13    plaintiffs agreed to dismissal of defendants Gilroy Unified School District and its superintendent.

14    (Doc. No. 36 at 16.)  However, plaintiffs attach to their motion a declaration from B.P. stating

15    that B.P. is now a subscriber to the weekly newsletter published by plaintiff Free Now Foundation

16    and plaintiff Free Now Foundation speaks for her as the mother of a disabled child who receives

17    services under an IEP.  (Doc. No. 25-1 at 38.)  Given this declaration substantiating B.P.'s

18    membership in plaintiff Free Now Foundation, the question of D.C. and B.P.'s standing is

19    nonetheless relevant for the court's consideration to the extent it could support plaintiff Free Now

20    Foundation's argument for associational standing.

21        On the merits, defendants argue D.C. and B.P. have not suffered injury and are not likely

22    to suffer any injury in the future.  (Doc. No. 30 at 22.)  As noted above, B.P. alleges that she was

23    informed in a text that D.C., an unvaccinated student with an IEP, could not attend seventh grade

24    without being vaccinated, but shortly thereafter a school nurse reached out and informed her that

25    D.C. could attend school regardless of vaccination status, and D.C. has attended seventh grade

26    without interruption.  (*Id.*)

27    /////

28    /////

12

3.    Plaintiffs Brave and Free Santa Cruz, Free Now Foundation

The plaintiff organizations argue they have associational standing to sue on behalf of their members.  (Doc. No. 36 at 17.)  The first element of associational standing requires that the organizations' members have standing to sue in their own right.  *Friends of the Earth*, 528 U.S. at 169.  Therefore, the court turns to the first required element of individual standing — whether the organizations' members have suffered an injury in fact.

a.    *Injury in Fact*

Plaintiffs' remaining claims are brought pursuant to the Individuals with Disabilities Education Act.  (Doc. No. 14 at ¶¶ 234–53.)  When suing pursuant to that Act, the denial of a free appropriate public education is an injury "to a student sufficient to satisfy the first prong of the standing inquiry."  *J.N. v. Oregon Dep't of Educ.*, No. 6:19-cv-00096-AA, 2020 WL 5209846, at *6 (D. Or. Sept. 1, 2020) (collecting cases); *see also Capistrano Unified Sch. Dist. v. S.W.*, 21 F.4th 1125, 1129 (9th Cir. 2021) ("'An eligible child' has 'a substantive right' to a FAPE.") (quoting *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 158 (2017)).

i.    Plaintiff Brave and Free Santa Cruz

Plaintiff Brave and Free Santa Cruz declares that their members include "current and/or potential parents and grandparents of unvaccinated children who wish their children and grandchildren to have the right to attend public or private schools, pre-schools, and daycare centers without regard to immunization status."  (Doc. No. 25-1 at 41) (declaration).  "The group also includes some members and/or attendees with family members who attend school under Individualized Education Programs."  (*Id.*)  Plaintiffs further allege in a conclusory fashion that "many" school districts have been advised by defendant CDPH to exclude unvaccinated students with disabilities from mainstream classes.  (Doc. No. 14 at ¶ 111.)

Plaintiff Brave and Free Santa Cruz argues that its factual allegations with respect to it suffering an injury in fact are sufficient because an organization composed of parents of children whose right to attend school *may* be affected by a school district's policies have standing to challenge those policies.  (Doc. No. 25-1 at 13) (citing *Parents Involved v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 702 (2007)).  Defendants respond that *Parents Involved* is distinguishable

13

1   because in that case, unlike this one, the policy actually resulted in, or was substantially likely to

2   result in, students being denied their school of choice because of their race.  (Doc. No. 32 at 20.)

3          Defendants' argument in this regard is persuasive.  As the Ninth Circuit has recognized,

4   the standing analysis undertaken by the Supreme Court in *Parents Involved* is limited to

5   circumstances where parents face "the very real prospect of being impacted by the facially

6   challenged . . . policy."  *Doe, next friend of Doe v. Horne*, No. 23-cv-03188, 2024 WL 4119371,

7   at *2 (9th Cir. Sept. 9, 2024).[5]

8          Furthermore, plaintiff Brave and Free Santa Cruz has failed to allege or show that its

9   members face "the very real prospect of being impacted by the facially challenged . . . policy."

10  *Doe, next friend of Doe*, 2024 WL 4119371, at *2.  In fact, plaintiff Brave and Free Santa Cruz

11  has failed to establish that any of its members are subject to a policy excluding unvaccinated

12  students with IEPs from mainstream classes.  In this regard, plaintiff Brave and Free Santa Cruz

13  does not specify which school districts its members attend school in and whether those school

14  districts have a policy excluding unvaccinated children with IEPs.  Further, the declaration

15  submitted by plaintiff Brave and Free Santa Cruz stating that its members include "current and/or

16  potential parents and grandparents of unvaccinated children" and separately also include

17  "members and/or attendees with family members who attend school under Individualized

18  Education Programs" does not allege or establish that any member is currently a parent of an

19  unvaccinated child with an IEP in California who might be subject to such a policy were one in

20  force.  (Doc. No. 25-1 at 41.)

21         The court therefore concludes that plaintiff Brave and Free Santa Cruz has failed to

22  establish that any of its members have suffered an injury in fact.  Accordingly, the court

23  concludes that its members lack Article III standing, and therefore plaintiff Brave and Free Santa

24  Cruz lacks associational standing.

25  /////

26  /////

27

28
___
[5]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

1          ii.     Plaintiff Free Now Foundation

2          Plaintiff Free Now Foundation, unlike plaintiff Brave and Free Santa Cruz, has at least

3  one "subscriber," B.P., who is a parent of an unvaccinated IEP student, D.C.  (Doc. No. 25-1 at

4  38.)  However, again plaintiffs do not allege that D.C. has been excluded from school on the basis

5  of vaccination status, instead arguing only that D.C. has been threatened with a policy that

6  excludes unvaccinated children from school, even where they have IEPs.  (Doc. No. 25-1 at 11.)

7          "[I]n a lawsuit brought to force compliance, it is the plaintiff's burden to establish

8  standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful

9  behavior will likely occur or continue, and that the threatened injury is certainly impending."

10 *Friends of the Earth*, 528 U.S. at 190 (internal quotation marks and citation omitted)

11 (distinguishing this requirement from a mootness inquiry); *see also Miller v. Time Warner Cable*

12 *Inc.*, No. 8:16-cv-00329-CAS-AS, 2016 WL 7471302, at *3 (C.D. Cal. Dec. 27, 2016).  Thus,

13 where the plaintiffs alleged that a school district's policy put the plaintiffs' children on an uneven

14 playing field and was bound to exclude some of them from their school of choice on the basis of

15 race, the Supreme Court concluded that the plaintiffs had met their burden to establish standing.

16 *Parents Involved*, 551 U.S. at 702.

17         Here, plaintiffs argue that they have alleged a comparable policy thereby satisfying the

18 injury in fact element.  (Doc. No. 36 at 15–16.)  In what appears to be an automated text

19 announcement, B.P. allegedly received a text message regarding broadly applicable vaccination

20 requirements for the upcoming school year.  (Doc. No. 14 at ¶ 5.)  Plaintiffs further allege that

21 before D.C. could be excluded from school for any amount of time, the school nurse reached out

22 to inquire about vaccination requirements and D.C.'s vaccination status, and when B.P. sent a

23 letter explaining the situation, the school nurse informed B.P. that D.C. would be permitted to

24 attend seventh grade regardless of vaccination status.  (*Id.* at ¶ 7.)  Further, plaintiffs allege D.C.

25 has continued to attend school uninterrupted since that communication.  (*Id.*)  Plaintiffs'

26 allegations detailing the school nurse's prompt clarification belies plaintiffs' argument that the

27 school district had or has a policy of excluding unvaccinated students with IEPs from school.  *See*

28 *Rosebrock v. Mathis*, 745 F.3d 963, 973 (9th Cir. 2014) ("Inconsistent enforcement of §

15

1  1.218(a)(9) was never general VAGLA or VA policy in the first place, and VAGLA's

2  recommitment to strict enforcement makes it particularly unlikely that VAGLA will change its

3  policy in the future.").  Because plaintiff Free Now Foundation has not established that any of its

4  members are subject to any policy excluding unvaccinated students with IEPs from school, it fails

5  to allege that its members have been denied a free appropriate public education.  Therefore,

6  plaintiff Free Now Foundation's own allegations show that its members have not suffered an

7  injury in fact.  *Cf. J.N.*, 2020 WL 5209846, at *6.

8         At the January 21, 2025 hearing on the pending motion, plaintiffs argued that D.C. had

9  suffered an injury in fact because he was not afforded the procedural safeguards guaranteed by

10  the Individuals with Disabilities Education Act.  The Act does require that parents be provided

11  written prior notice containing certain information whenever the local educational agency

12  "proposes to initiate or change . . . the identification, evaluation, or educational placement of the

13  child, or the provision of a free appropriate public education to the child."  20 U.S.C. §

14  1415(b)(3)(A).  As the Ninth Circuit has recognized, "[n]ot every procedural violation, however,

15  is sufficient to support a finding that the child in question was denied a FAPE."  *Amanda J. ex rel.*

16  *Annette J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 892 (9th Cir. 2001).  "While some procedural

17  violations of the IDEA may be harmless, such errors constitute a denial of a free appropriate

18  public education if they seriously impair the parents' opportunity to participate in the IEP

19  formulation process, result in the loss of educational opportunity for the child, or cause a

20  deprivation of the child's educational benefits."  *Timothy O. v. Paso Robles Unified Sch. Dist.*,

21  822 F.3d 1105, 1124 (9th Cir. 2016).  "A loss of an educational opportunity occurs, for example,

22  when there is a strong likelihood that, but for the procedural error, an alternative placement would

23  have been better considered."  *Id.* (internal quotation marks and citation omitted).  Because D.C.

24  was not excluded from school, his educational placement was not dictated by his vaccination

25  status, and none of the other grounds apply, it appears clear that plaintiffs have failed to allege

26  that any procedural violation of the Individuals with Disabilities Education Act has resulted in the

27  denial of a free appropriate public education here.  As such, the purported procedural violation

28  /////

1    plaintiffs identify does not and cannot constitute an injury in fact. *Cf. J.N.*, 2020 WL 5209846, at

2    *6.

3        Because plaintiff Free Now Foundation's members have not suffered an injury in fact, its

4    members do not have standing to sue in their own right. As such, plaintiff Free Now Foundation

5    lacks associational standing. In sum, all of the plaintiffs in this action lack Article III standing.

6    For this reason alone, plaintiffs' motion for a preliminary injunction must be denied.

7    **C.    Likelihood of Success on the Merits[6]**

8        1.    *Failure to Exhaust Administrative Remedies*

9        The Individuals with Disabilities Education Act "requires a plaintiff to exhaust his or her

10   administrative remedies before filing a civil action." *Swanson*, 2016 WL 6039024, at *1 (citing

11   20 U.S.C. § 1415(l)). Three exceptions to this exhaustion requirement exist where: (1) it would

12   be futile to exhaust administrative remedies, (2) the educational agency has adopted a policy or

13   pursued a practice of general applicability that is contrary to law, or (3) it is improbable that

14   adequate relief can be obtained by pursuing those administrative remedies. *Doe ex rel. Brockhuis*

15   *v. Ariz. Dep't of Educ.*, 111 F.3d 678, 681, 683–84 (9th Cir. 1997) (finding exhaustion not

16   excused on its facts).

17       At the January 21, 2025 hearing on the pending motion, plaintiffs' counsel conceded that

18   plaintiffs had not exhausted their administrative remedies. Plaintiffs therefore rely solely on their

19   argument that exhaustion is not required here. They provide no direct support for this contention,

20   instead arguing only that defendants have cited no authority for the proposition that exhaustion of

21   administrative remedies, which are retrospective, is a requirement where only prospective

22   declarative and/or injunctive relief is being sought. (Doc. No. 36 at 20.)

23       Plaintiffs are incorrect in this regard. "Prospective injunctive relief to alter an IEP or the

24   education placement of a disabled student" *is* available under the Individuals with Disabilities

25   _____

26   [6] Defendants argue plaintiffs are seeking a mandatory injunction, which is disfavored and also
     requires that the law and facts "clearly favor" plaintiffs' position. (Doc. No. 30 at 16) (citing
27   *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015)). The court need not reach this
     question because plaintiffs have failed to meet the lower bar of demonstrating a likelihood of
28   success on the merits of their claims.

1    Education Act.  *M.M. v. Lafayette Sch. Dist.*, 767 F.3d 842, 861 (9th Cir. 2014), *as amended* (Oct.

2    1, 2014).  Even assuming plaintiffs' argument is that the requested injunctive relief sought here

3    concerns "'structural, systemic reforms,'" plaintiffs do not meet the high bar set for this exception

4    to apply.  *Hawai'i Disability Rts. Ctr. v. Kishimoto*, 122 F.4th 353, 367 (9th Cir. 2024) (quoting

5    *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1309 (9th Cir. 1992)).  The Ninth Circuit has

6    "defined a systemic claim as one that either 'implicates the integrity or reliability of the IDEA

7    dispute resolution procedures themselves, or requires restructuring the education system itself in

8    order to comply with the dictates of the Act.'"  *Student A ex rel. Parent A v. San Francisco*

9    *Unified Sch. Dist.*, 9 F.4th 1079, 1084 (9th Cir. 2021) (quoting *Doe ex rel. Brockhuis*, 111 F.3d at

10   682).  "Plaintiffs here are not challenging the integrity of the state's administrative procedures;

11   they simply seek to bypass them."  *Student A*, 9 F.4th at 1085.  Further, because plaintiffs raise

12   "only a limited policy challenge," their claims do not seek a restructuring of the education system

13   itself.  *Hawai'i Disability Rts. Ctr.*, 122 F.4th at 367 ("Although [the plaintiff] alleged several

14   issues with [the defendant's] practices and procedures concerning ABA therapy, its policy

15   challenge does not raise . . . wide-reaching and systemic concerns.").  Therefore, plaintiffs are not

16   excused from the requirement that they exhaust their administrative remedies prior to filing suit.

17        Because plaintiffs have not exhausted their administrative remedies prior to filing suit as

18   is required, plaintiffs have also not met their burden of establishing they are likely to succeed on

19   the merits of their claims.

20   **D.    Remaining *Winter* Factors**

21        The court will briefly address the remaining *Winter* factors which require that a plaintiff

22   seeking preliminary injunctive relief show:  that the plaintiff is likely to suffer irreparable harm in

23   the absence of the granting of the requested relief, that the balance of equities tips in the

24   plaintiff's favor, and that an injunction is in the public interest.  *Stormans*, 586 F.3d at 1127.

25   However, the court notes that "with no likelihood of success on the merits, the court does not

26   need to [do so]."  *Ensign v. U.S. Bank Nat'l Ass'n*, No. 3:16-cv-01609-HZ, 2016 WL 6897785, at

27   *3 (D. Or. Nov. 22, 2016); *see also Winter*, 555 U.S. at 20.  When a party seeks a preliminary

28   */////*

1   injunction against the government, the balance of the equities and public interest factors merge.

2   *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

3       Plaintiffs argue the balance of hardships here tips sharply in plaintiffs' favor because they

4   will either be barred from their schools or be forced to get vaccines that have "unavoidable"

5   "adverse effects."  (Doc. No. 25 at 30) (quoting *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 230

6   (2011)).  "'A plaintiff must do more than merely allege imminent harm sufficient to establish

7   standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to

8   preliminary injunctive relief.'"  *Boardman v. Pacific Seafood Group*, 822 F.3d 1011, 1022 (9th

9   Cir. 2016) (quoting *Caribbean Marine Servs.*, 844 F.2d at 674 (emphasis in original)).  As

10  discussed above in addressing standing, plaintiffs have not established they or their members'

11  children with IEPs are being excluded from school or immediately face exclusion from school

12  based on vaccination status.  Nor have plaintiffs established they or their members' children with

13  IEPs will be required to become vaccinated because they have not sufficiently alleged that their

14  school districts in fact have any policy of requiring vaccination for IEP students.

15      Finally, plaintiffs argue the balance of equities and public interest tip in their favor

16  because there is a strong legislative and judicial history affirming the public policy of opening the

17  doors of public education to disabled children.  (Doc. No. 25-1 at 31.)  Further, plaintiffs again

18  question the safety of vaccines.  (*Id.*)  As stated previously, plaintiffs have not alleged facts that if

19  proven would establish they are subject to the risks they purport to fear.  To the extent other,

20  unidentified, unvaccinated IEP students might possibly face exclusion from school, those students

21  have access to administrative remedies and stay-put requirements that will preserve those

22  students' access to education in the short and long-term.  20 U.S.C. 1415(j).  While it is certainly

23  the case that it is in the public interest to protect access to public education for disabled children,

24  and there may conceivably be some unvaccinated children subject to unidentified exclusion

25  policies whose parents do not know to access administrative remedies, plaintiffs have certainly

26  not alleged as much.  Furthermore, this hypothetical public interest cannot overcome plaintiffs'

27  lack of standing or failure to establish their likelihood of success on the merits of their claims.

28  /////

1

2                              **CONCLUSION**

3          For the reasons explained above, plaintiffs' motion for a preliminary injunction (Doc. No.

25) is DENIED.

4          IT IS SO ORDERED.

5

6    Dated:   **January 24, 2025**                    _____

DALE A. DROZD

7                                                     UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28