1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BRAVE AND FREE SANTA CRUZ, et          No.  2:24-cv-02312-DAD-JDP
     al.,
12
                   Plaintiffs,
13                                           ORDER GRANTING DEFENDANTS'
          v.                                 MOTIONS TO DISMISS WITH LEAVE TO
14                                           AMEND
     TOMAS J. ARAGON, in his official
15   capacity as Director of the California  (Doc. Nos. 19, 27, 28, 29)
     Department of Public Health, et al.,
16
                   Defendants.
17

18

19          This matter is before the court on defendants' motions to dismiss plaintiffs' first amended

20   complaint ("FAC").  (Doc. Nos. 19, 27, 28, 29.)  The pending motions were taken under

21   submission to be decided on the papers pursuant to Local Rule 230(g).  (Doc. Nos. 24, 44, 47.)

22   For the reasons explained below, the court will grant defendants' motions to dismiss.

23                              **BACKGROUND**

24   **A.    Legal Background**

25          The Individuals with Disabilities Education Act ("IDEA") provides federal funding to

26   states and requires that children with disabilities are provided, *inter alia*, a free appropriate public

27   education, individualized education programs ("IEP"), and the least restrictive environment

28   /////

                                    1

such that children with disabilities are educated with children who are not disabled where possible. 20 U.S.C. § 1412(a).

In 1983 the U.S. District Court for the Northern District of California issued a permanent injunction requiring that the California Department of Education ("CDE")'s State Superintendent of Public Instruction and all successors take certain steps to ensure compliance with the IDEA. *Doe v. Maher*, 793 F.2d 1470, 1501–02 (9th Cir. 1986), *aff'd as modified sub. nom. Honig v. Doe*, 484 U.S. 305 (1988). The 1983 permanent injunction issued in *Doe* was designed to address expulsions and other disciplinary actions taken against students with disabilities where the disciplinary action was based on behavior or misconduct which was a manifestation of or arose out of the student's disability. *Id.* at 1501. That permanent injunction did not address vaccination requirements. *Id.* at 1501–02.

In 2015, California eliminated the religious and personal belief exemptions to the mandatory immunizations required for California school children. Cal. Health & Safety Code § 120335(b). The Act eliminating the religious and personal belief exemptions to immunization requirements also included a subsection relating to IEP students. *Id.* at § 120335(h) ("This section does not prohibit a pupil who qualifies for an individualized education program, pursuant to federal law and § 56026 of the Education Code, from accessing any special education and related services required by his or her individualized education program.").

**B.    Procedural and Factual Background**

On August 26, 2024, plaintiffs Brave and Free Santa Cruz, Free Now Foundation, D.C., and B.P. filed this action against the following defendants: Tomas J. Aragon, in his official capacity as Director of the California Department of Public Health ("defendant CDPH"); Tony Thurmond, in his official capacity as California State Superintendent of Public Instruction for the CDE; Gavin Newsom, in his official capacity as Governor of the State of California; Gilroy Unified School District; and Anisha Munshi, Superintendent of Gilroy Unified School District. (Doc. No. 1.) On October 31, 2024, plaintiffs filed their FAC, alleging as follows. (Doc. No. 14.)

/////

2

1        The membership of both plaintiff Brave and Free Santa Cruz and plaintiff Free Now

2    Foundation includes "significant numbers of parents and grandparents of unvaccinated children

3    with IEP[s] who attend California schools under the benefits of the IDEA and who wish their

4    children and grandchildren to have the right to attend those schools, preschools, and daycare

5    centers without regard to their immunization status." (*Id.* at ¶¶ 36, 46.)  Further, "those parents

6    and grandparents of un-immunized children with IEPs are at risk of bearing the personal and

7    financial costs of:  (a) caring for any of those children who become injured as a result of any

8    immunizations mandated for those children under California law, and/or (b) bearing the personal

9    and financial burdens of home schooling the children excluded from public and private schools

10   under Health and Safety Code 120335." (*Id.* at ¶¶ 37, 47.)  "[M]any" school districts have been

11   advised by defendant CDPH to exclude unvaccinated students with disabilities from mainstream

12   classes.  (*Id.* at ¶ 111.)

13       Based on the foregoing allegations, plaintiffs bring the following three claims in their

14   FAC:  (1) failure to comply with the 1983 and 1990[1] permanent injunctions issued by the U.S.

15   District Court for the Northern District of California in *Gonzales ex rel. Doe v. Maher*, No. 80-cv-

16   04270, asserted against defendant Tony Thurmond, in his official capacity as California State

17   Superintendent of Public Instruction for the CDE; (2) failure to assure compliance of all schools

18   receiving funds under the IDEA with the requirements of Part B of the IDEA, asserted against

19   defendants Gavin Newsom, in his official capacity as Governor of the State of California, and

20   Tony Thurmond, in his official capacity as California State Superintendent of Public Instruction

21   for the CDE; and (3) threatened denial of a free appropriate public education without prior written

22   /////

23   /////

24   /////

---

25   [1]  At the January 21, 2025 hearing on plaintiffs' motion for preliminary injunction, plaintiffs

26   explained that the docket in *Gonzales ex rel. Doe v. Maher*, No. 80-cv-04270 (N.D. Cal.) lists
     permanent injunctions issued by the district court in that case in 1983 and 1990, but the records of

27   any 1990 permanent injunction have since been destroyed.  Because the 1983 permanent
     injunction was appealed and affirmed in part, however, the contents of the 1983 permanent

28   injunction are still available.  *See Doe*, 793 F.2d at 1501–02.

1  notice, asserted against defendants Gilroy Unified School District and CDPH.  (*Id.* at ¶¶ 226–

2  59.)[2]

3      On December 3, 2024, plaintiffs filed a motion for preliminary injunction, which came

4  before the court for hearing on January 21, 2025.  (Doc. Nos. 25, 45.)  The court denied plaintiffs'

5  motion on January 27, 2025.  (Doc. No. 46.)

6      On November 12, 2024, defendant Thurmond filed his pending motions to dismiss

7  plaintiffs' FAC.  (Doc. No. 19.)  On November 26, 2024, plaintiffs filed an opposition to that

8  motion to dismiss with an accompanying request for judicial notice, and on December 4, 2024,

9  defendant Thurmond filed a reply thereto.  (Doc. Nos. 23, 26.)  On January 3, 2025, defendant

10 Thurmond filed a second request for judicial notice in connection with his motion to dismiss.

11 (Doc. No. 40.)

12     On December 12, 2024, defendants Aragon and Newsom each filed separate motions to

13 dismiss plaintiffs' FAC.  (Doc. Nos. 27, 28.)  Plaintiffs opposed both motions, (Doc. Nos. 33, 35),

14 and on January 8, 2025, defendants Aragon and Newsom each filed reply briefs in support of

15 their pending motions, (Doc. Nos. 42, 43).

16     On December 13, 2024, defendants Gilroy Unified School District and Anisha Munshi

17 filed their pending motion to dismiss plaintiffs' FAC, and on December 17, 2024, plaintiffs filed

18 a statement of non-opposition to that motion.[3]  (Doc. Nos. 29, 31.)

19 /////

20

---

21 [2] In the action pending before this court, plaintiffs do not challenge the statute requiring
   immunizations.

22

23 [3]  In light of this statement of non-opposition, wherein plaintiffs request dismissal without
   prejudice of defendants Gilroy Unified School District and Anisha Munshi, the court will dismiss

24 those defendants.  *Myers v. Calandrino*, No. 16-cv-02239-JGB-JEM, 2017 WL 11632256, at *6
   (C.D. Cal. Mar. 1, 2017) ("The Court construes Plaintiff's non-opposition as a voluntary

25 dismissal of Parra as a defendant pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).  Thus, Parra is
   dismissed from this action.").  Plaintiffs further concede that dismissal of defendants Gilroy

26 Unified School District and Anisha Munshi renders moot the question of whether plaintiffs D.C.
   and B.P. have standing to sue.  (Doc. No. 23 at 11.)  Therefore, the court will dismiss all claims

27 brought by plaintiffs D.C. and B.P. without leave to amend and will direct the Clerk of the Court
   to terminate plaintiffs D.C. and B.P and defendants Gilroy Unified School District and Anisha

28 Munshi from this action.

1

**LEGAL STANDARD**

2          The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

3   sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

4   1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of

5   sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901

6   F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to

7   relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A

8   claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

9   the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.

10  Iqbal*, 556 U.S. 662, 678 (2009).

11          In determining whether a complaint states a claim on which relief may be granted, the

12  court accepts as true the allegations in the complaint and construes the allegations in the light

13  most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However,

14  the court need not assume the truth of legal conclusions cast in the form of factual allegations.

15  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not

16  require detailed factual allegations, "it demands more than an unadorned, the-defendant-

17  unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers

18  mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."

19  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements

20  of a cause of action, supported by mere conclusory statements, do not suffice."). It is

21  inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the

22  defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen.

23  Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

24          In ruling on a motion to dismiss under Rule 12(b)(6), the court is permitted to consider

25  material that is properly submitted as part of the complaint, documents that are not physically

26  attached to the complaint if their authenticity is not contested and the plaintiff's complaint

27  necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d.

28  668, 688–89 (9th Cir. 2001).

**ANALYSIS**

**A.    Standing**

    1.    Applicable Legal Standard

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983); *see also Matter of East Coast Foods, Inc.,* 66 F.4th 1214, 1218 (9th Cir. 2023) (Because "standing is an 'essential and unchanging' requirement . . . a party must establish an Article III case or controversy before we exert subject matter jurisdiction.") (citations omitted); *City of Oakland v. Lynch*, 798 F.3d 1159, 1163 (9th Cir. 2015) ("A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and Article III federal courts lack subject matter jurisdiction over such suits.") (quoting *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004)).  An actual case or controversy will be held to exist when a plaintiff establishes standing.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

"[S]tanding requires that (1) the plaintiff suffered an injury in fact, i.e., one that is sufficiently 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical,' (2) the injury is 'fairly traceable' to the challenged conduct, and (3) the injury is 'likely' to be 'redressed by a favorable decision.'" *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (*en banc*) (citing *Lujan*, 504 U.S. at 560–61).  "Standing must be shown with respect to each form of relief sought, whether it be injunctive relief, damages or civil penalties." *Id*.  "[T]o establish standing to pursue injunctive relief . . . [plaintiff] must demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (internal quotation omitted).  "To determine whether organizational standing requirements have been satisfied, [courts] 'conduct the same inquiry as in the case of an individual:  Has the plaintiff alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction?'" *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 662 (9th Cir. 2021) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982)).  "Organizations can assert standing on behalf of their

1  own members, or in their own right." *E. Bay Sanctuary Covenant*, 993 F.3d at 662 (internal

2  citations omitted)

3       An organization has associational "standing to bring suit on behalf of its members when

4  its members would have standing to sue in their own right, the interests at stake are germane to

5  the organization's purpose, and neither the claim asserted nor the relief requested requires

6  individual members' participation in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl.*

7  *Servs. (TOC), Inc.*, 528 U.S. 167, 169 (2000); *see also Stavrianoudakis v. U.S. Fish and Wildlife*

8  *Serv.,* 108 F.4th 1128, 1143 (9th Cir. 2024); *Associated Gen. Contractors of Am., San Diego*

9  *Chapter, Inc. v. Cal. Dep't. of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013).

10       2.     Plaintiffs Brave and Free Santa Cruz, Free Now Foundation

11       The first element of associational standing requires that the organizations' members have

12  standing to sue in their own right. *Friends of the Earth*, 528 U.S. at 169.  When suing pursuant to

13  the IDEA, the denial of a free appropriate public education is an injury "to a student sufficient to

14  satisfy the first prong of the standing inquiry." *J.N. v. Or. Dep't of Educ.*, No. 6:19-cv-00096-

15  AA, 2020 WL 5209846, at *6 (D. Or. Sept. 1, 2020) (collecting cases); *see also Capistrano*

16  *Unified Sch. Dist. v. S.W.*, 21 F.4th 1125, 1129 (9th Cir. 2021) ("'An eligible child' has 'a

17  substantive right' to a [free appropriate public education].") (quoting *Fry v. Napoleon Cmty. Sch.*,

18  580 U.S. 154, 158 (2017)).

19       In his pending motion, defendant Thurmond argues that plaintiffs' members do not have

20  standing to sue in their own right because they have not suffered an injury in fact—namely,

21  plaintiffs do not allege the existence of any member who has been excluded from school based on

22  vaccination status.  (Doc. No. 19-1 at 18.)  In their opposition, plaintiffs argue that their members

23  have suffered an injury in fact because members' unvaccinated children with IEPs may be subject

24  to a policy that excludes them based on vaccination status.  (Doc. No. 23 at 12–15.)

25       Plaintiffs Brave and Free Santa Cruz and Free Now Foundation each allege that their

26  members include "significant numbers of parents and grandparents of unvaccinated children with

27  IEP[s] who attend California schools under the benefits of the IDEA and who wish their children

28  and grandchildren to have the right to attend those schools, preschools, and daycare centers

1  without regard to their immunization status." (Doc. No. 14 at ¶¶ 36, 46.)  These organizations

2  further allege that "those parents and grandparents of un-immunized children with IEPs are at risk

3  of bearing the personal and financial costs of:  (a) caring for any of those children who become

4  injured as a result of any immunizations mandated for those children under California law, and/or

5  (b) bearing the personal and financial burdens of home schooling the children excluded from

6  public and private schools under Health and Safety Code 120335." (*Id.* at ¶¶ 37, 47.)  Plaintiffs

7  allege that "many" school districts have been advised by defendant CDPH to exclude

8  unvaccinated students with disabilities from mainstream classes.  (*Id.* at ¶ 111.)

9         Plaintiffs argue that the foregoing is sufficient to allege standing because an organization

10  composed of parents whose children's right to attend school *may* be affected by a school district's

11  policies have standing to challenge those policies.  (Doc. No. 23 at 11–12) (citing *Parents*

12  *Involved v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 702 (2007)).  Defendant Thurmond responds

13  that *Parents Involved* is distinguishable because in that case, unlike this one, the policy actually

14  resulted in, or was substantially likely to result in, students being denied their school of choice

15  because of their race.  (Doc. No. 26 at 5–6.)

16         The court finds defendant Thurmond's argument in this regard to be persuasive.  As the

17  Ninth Circuit has recognized, the standing analysis undertaken by the Supreme Court in *Parents*

18  *Involved* is limited to circumstances where parents face "the very real prospect of being impacted

19  by the facially challenged . . . policy." *Doe ex rel. Doe v. Horne*, No. 23-cv-03188, 2024 WL

20  4119371, at *2 (9th Cir. Sept. 9, 2024).[4]  Plaintiffs do not specify in which school districts their

21  members attend school and whether those school districts have policies excluding unvaccinated

22  children with IEPs.  In fact, plaintiffs have failed to allege that any of their members are subject

23  to a policy excluding unvaccinated students with IEPs from mainstream classes.  The

24  organizational plaintiffs have therefore failed to allege that their members face a "very real

25  prospect of being impacted by the facially challenged . . . policy." *Id.*

26  /////

27
_____

28  [4]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

1    The court concludes that the organizational plaintiffs have failed to sufficiently allege that

2    any of their members have suffered an injury in fact.  Accordingly, their members lack Article III

3    standing, and plaintiffs Brave and Free Santa Cruz and Free Now Foundation lack associational

4    standing.

5    **B.    *Gonzales ex rel. Doe v. Maher* Permanent Injunctions**

6    Plaintiffs' first claim seeks enforcement of 1983 and 1990 permanent injunctions issued

7    by the U.S. District Court for the Northern District of California in *Gonzales ex rel. Doe v.*

8    *Maher*, No. 80-cv-04270.  (Doc. No. 14 at ¶¶ 226–33.)  Though no party raises this issue, this

9    court must first address its authority to enforce permanent injunctions issued in the U.S. District

10   Court for the Northern District of California.[5]  *Klett v. Pim*, 965 F.2d 587, 590 (8th Cir. 1992)

11   (finding that where the plaintiff brings a claim for contempt of another court's injunction, the

12   court lacks subject matter jurisdiction over that claim); *see also MOAC Mall Holdings LLC v.*

13   *Transform Holdco LLC*, 598 U.S. 288, 298 (2023) ("We have clarified that jurisdictional rules

14   pertain to the power of the court rather than to the rights or obligations of the parties.") (citation

15   omitted); *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007)

16   ("[T]here is no mandatory sequencing of jurisdictional issues.") (citation omitted).

17   It appears clear that the undersigned, a district judge in the U.S. District Court for the

18   Eastern District of California, lacks the authority to 'enforce' an injunction issued in the U.S.

19   District Court for the Northern District of California.  *Xcentric Ventures, LLC v. Arden*, No. 10-

20   cv-80058-SI, 2011 WL 806629, at *3 (N.D. Cal. Mar. 2, 2011) ("Plaintiff's motion [to enforce a

21   permanent injunction] does not cite a single court case or statute to explain why it has chosen to

22   come to the Northern District of California for this purpose, or to explain why it is legal or

23   appropriate for this Court to enforce an injunction issued elsewhere.  It appears to the Court that

24   plaintiff's motion is really a motion to find that defendants are in contempt of the Arizona court's

---

[5]  As a preliminary matter, the court notes that the appropriate vehicle for seeking enforcement of a permanent injunction is a motion for contempt.  *See, e.g.*, *Jerry's Famous Deli, Inc. v. Papanicolaou*, 383 F.3d 998, 1001 (9th Cir. 2004) ("The district court's contempt order found [the defendant] in violation of three provisions of the stipulated permanent injunction.").  No such motion has been made in this case.

1    order, and an effort to effectuate one of the Arizona court's threatened contempt sanctions.");

2    *Wright v. Runnels*, No. 2:05-cv-02530-MCE-EFB, 2007 WL 9807471, at *3 (E.D. Cal. June 28,

3    2007) (finding that a court in the U.S. District Court for the Eastern District of California does not

4    have authority to find a plaintiff in contempt of an order issued in the U.S. District Court for the

5    Northern District of California).

6          When given an opportunity to address this issue at the January 21, 2025 hearing on

7    plaintiffs' motion for preliminary injunction, plaintiffs' counsel conceded that they had no

8    authority in support of the proposition that this court may 'enforce' a permanent injunction issued

9    by the U.S. District Court for the Northern District of California.  The court finds that it lacks

10   authority to adjudicate plaintiffs' first claim.

11         Because plaintiffs lack Article III standing and this court lacks authority to enforce the

12   permanent injunctions at issue, the court lacks jurisdiction over plaintiffs' claims.  As such, the

13   court may not reach defendants' remaining arguments regarding the merits of plaintiffs' claims.

14   *Sinochem Int'l Co.*, 549 U.S. at 430–31 (2007) ("[A] federal court generally may not rule on the

15   merits of a case without first determining that it has jurisdiction over the category of claim in suit

16   (subject-matter jurisdiction) and the parties (personal jurisdiction)."); *Righthaven LLC v. Hoehn*,

17   /////

18   /////

19   /////

20   /////

21   /////

22   /////

23   /////

24   /////

25   /////

26   /////

27   /////

28   /////

10

1    716 F.3d 1166, 1172 (9th Cir. 2013) (finding that when a district court determines that the

2    plaintiff lacks Article III standing, it may not reach the merits).[6]

3    **C.     Leave to Amend**

4            Leave to amend should be granted "freely" when justice so requires.  Fed. R. Civ.

5    P. 15(a).  The Ninth Circuit maintains a policy of "extreme liberality generally in favoring

6    amendments to pleadings."  *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960).

7    Reasons "such as undue delay, bad faith or dilatory motive . . . repeated failure to cure

8    deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of

9    leave to amend.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  A district court "should grant leave

10   to amend even if no request to amend the pleading was made, unless it determines that the

11   pleading could not possibly be cured by the allegation of other facts."  *Cook, Perkiss and Liehe,*

12   *Inc. v. N. Cal. Collection Servs.*, 911 F.2d 242, 247 (9th Cir. 1990).  "Facts raised for the first

13   time in [a] plaintiff's opposition papers should be considered by the court in determining whether

14   to grant leave to amend or to dismiss with or without prejudice."  *Broam v. Bogan*, 320 F.3d

15   1023, 1026 n.2 (9th Cir. 2003).

16   _____

17   [6]  Defendant Thurmond requests that the court take judicial notice of three court orders
     concerning California's compliance with the IDEA and with a consent decree.  (Doc. No. 19-2,

18   40.)  The court declines to do so because these documents as they are not relevant to the court's
     jurisdictional inquiries.  *Ruiz v. City of Santa Maria,* 160 F.3d 543, 548 n.13 (9th Cir. 1998)

19   (finding judicial notice inappropriate where the facts to be noticed were not relevant to the
     disposition of the issues before the court).  They pertain instead to the merits of this action, which

20   the court may not reach.  *Righthaven LLC,* 716 F.3d at 1172.  In addition, plaintiffs request that
     the court take judicial notice of 18 documents.  (Doc. No. 23-1.)  Plaintiffs' request is denied as to

21   exhibits 1–17 because these documents are not relevant to the jurisdictional issues before the
     court.  *Ruiz,* 160 F.3d at 548 n.13.  Plaintiffs' exhibits 1–17 purport to show that certain students

22   have successfully challenged exclusion of their children from school and that CDPH has advised
     certain school districts that they can exclude IEP students who do not meet immunization

23   requirements, but these exhibits do not purport to show that any of plaintiffs' *members* have
     unvaccinated children with IEPs in school districts with policies that exclude such children, as

24   required to overcome the deficiencies of plaintiffs' pleading as to standing.  Regarding exhibit 18,
     a declaration filed in another case, the court takes judicial notice of the existence of this court

25   filing.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.1 (9th Cir. 2006) ("We
     may take judicial notice of court filings and other matters of public record.").  Finally, in moving

26   to dismiss, defendant Aragon requests judicial notice of five documents containing legislative
     materials.  (Doc. No. 27-1.)  His request is also denied as not relevant to the jurisdictional issues

27   before the court.  *Ruiz,* 160 F.3d at 548 n.13.

28

1    Here, plaintiffs have requested leave to amend in the event that defendants' motions to

2  dismiss are granted.  (Doc. No. 23 at 20–21.)  Further, plaintiffs have only amended their

3  complaint once and did so without the benefit of a decision from the court addressing the

4  sufficiency of their original complaint.  (Doc. No. 14.)

5    Additionally, it may be possible for plaintiffs to cure the identified pleading deficiencies

6  as to standing by alleging, for instance, the school districts of members' children and those school

7  districts' policies regarding unvaccinated students with IEPs.

8    However, plaintiffs' first claim asks this court to "enforce" permanent injunctions issued

9  elsewhere, by the U.S. District Court for the Northern District of California.  This court is without

10  authority to do so, and the allegation of additional facts could not cure this deficiency.  Therefore,

11  the court concludes that further amendment of plaintiffs' first claim would be futile. As such,

12  plaintiffs' first claim will be dismissed without leave to amend and "without prejudice to it being

13  renewed in" the U.S. District Court for the Northern District of California. *Xcentric Ventures,*

14  *LLC*, 2011 WL 806629, at *3.

15    The court will grant leave to amend as to plaintiffs' remaining claims, though plaintiffs

16  are cautioned that failure to cure the defects identified in this order or in the court's January 27,

17  2025 order denying plaintiffs' motion for preliminary injunction (Doc. No. 46) will likely result

18  in dismissal of plaintiffs' second amended complaint without further leave to amend. *Foman*,

19  371 U.S. at 182.

20                                    **CONCLUSION**

21    For the reasons explained above,

22    1.    Defendants' motions to dismiss (Doc. Nos. 19, 27, 28, 29) are GRANTED as

23        follows:

24        a.  Plaintiffs' claims as brought by plaintiffs D.C. and B.P. are DISMISSED

25            without leave to amend and without prejudice;

26        b.  Defendants Gilroy Unified School District and Anisha Munshi are hereby

27            DISMISSED from this action without prejudice;

28  /////

c.  As to all remaining parties, plaintiffs' first claim is DISMISSED without leave to amend and without prejudice to it being renewed in the U.S. District Court for the Northern District of California;

d.  As to all remaining parties, plaintiffs' second and third claims are DISMISSED with leave to amend;

2.  Plaintiffs shall file their second amended complaint, or alternatively, a notice of their intent to not file a second amended complaint, within twenty-one (21) days from the date of entry of this order;

3.  The Clerk of the Court is directed to update the docket to reflect the termination of defendants Gilroy Unified School District and Anisha Munshi and plaintiffs D.C. and B.P. from this action; and

4.  The court hereby RESETS the Initial Scheduling Conference in this matter for November 24, 2025 at 1:30 p.m. before District Judge Dale A. Drozd by Zoom.

IT IS SO ORDERED.

Dated:   **August 11, 2025**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE